F7fWfisC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                                    15 Cr. 384 (PAE)


BEKIM FISEKU and SEFEDIN JAJAGA,

          Defendants.

------------------------------x

                             New York, N.Y.
                             July 15, 2015
                             10:30 a.m.


Before:

               HON. PAUL A. ENGELMAYER,

                             District Judge


                   APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
ROBERT W. ALLEN
    Assistant United States Attorney

JAMES R. FROCCARO
    Attorney for Defendant Fiseku

IRVING COHEN
SARA TOMAR
    Attorneys for Defendant Jajaga

F7fWfisC

```
 1            (Case called)
 2            MR. ALLEN:  Good morning, your Honor.  Robert Allen,
 3    for the government.
 4            MR. FROCCARO:  Good morning, your Honor.  James
 5    Froccaro, for Mr. Fiseku.
 6            MR. COHEN:  Good morning, your Honor.  Irving Cohen
 7    appearing for Mr. Jajaga.
 8            THE COURT:  Good morning.  This is our initial
 9    conference in the case.
10            Mr. Allen, can you tell me a little bit about the
11    case.
12            MR. ALLEN:  Sure, your Honor.  The indictment in this
13    case, 15 Cr. 384, was returned by the grand jury on September
14    18.
15            THE COURT:  September?
16            MR. ALLEN:  I'm sorry.  June 18.  It was not returned
17    in the future.  It charges the defendants with conspiring to
18    commit a robbery, in violation of the Hobbs Act.  The robbery
19    as alleged in the indictment, or the conspiracy is alleged to
20    have occurred in September 2014.  The defendants were presented
21    on June 22, 2015, upon your Honor's referral.  We have produced
22    an initial set of discovery on July 9, which Mr. Froccaro has
23    received and Mr. Cohen has not yet received because we put the
24    wrong suite number, unfortunately, but I will give that to him
25    shortly.  I want to confer with the case agents, but I
```

F7fWfisC

1    anticipate we'll be able to complete discovery within 10 to 14

2    days.

3                THE COURT:  All right.  I have a handful of questions

4    for you.  Thank you.  First of all, I take it time was excluded

5    when the case was presented to the magistrate.

6                MR. ALLEN:  It was not.

7                THE COURT:  You're telling me time has run in this

8    case for a month?

9                MR. ALLEN:  No.  Time ran from the 22nd, when the

10   presentment occurred, and we didn't ask to exclude time at that

11   point because we hadn't produced discovery and there weren't

12   any ongoing plea discussions or dispositions taking place at

13   that time.

14               THE COURT:  Wait a minute.  You're telling me we're

15   having an initial conference, no time has been excluded, so

16   maybe three weeks or more have run?

17               MR. ALLEN:  No.  We initially had a conference set for

18   July 7 and in part based on the proximity of that date we

19   didn't ask to exclude time.  Due to the unavailability of

20   counsel, we moved the conference until today so we put in a

21   letter on July 6 to ask to exclude time, and your Honor

22   excluded time in response to that letter.

23               THE COURT:  From the sixth on?

24               MR. ALLEN:  I think the order just says time is

25   excluded in this case.

F7fWfisC

             THE COURT:  It's prospective.  So just to be clear,

the days between June 22 and July 6 have run off the clock?

             MR. ALLEN:  Correct.

             THE COURT:  For future reference, my strong desire is

not to have time needlessly run off the speedy trial clock.  If

time is running, you need to alert my chambers right away so I

can have the conference right away, and if there's a *bona fide*

reason to exclude the time we'll do it.  It may well be that

there were good reasons or good justifications to do that.  But

it ties the government's hands, the defense's hands,

potentially, and my hands to have the time running for no good

reason.  For future reference, and I'm sure I'm speaking for my

colleagues as well, if you see the clock running in a case,

alert chambers so the judge can decide what to do.

             MR. ALLEN:  Will do.  I apologize, your Honor.

             THE COURT:  No worries, but it's just good practice.

It's a flexible statute that permits lots of good reasons to

exclude time, but some are only prospective in nature.

             MR. ALLEN:  Yes.

             THE COURT:  Tell me a little more about the actual

robbery in question.  What is alleged to actually have

happened?

             MR. ALLEN:  The defendants purchased marijuana or

engaged in a marijuana transaction with the alleged victim of

the robbery.  Apparently that transaction went poorly and

F7fWfisC

|    |    |
|----|----|
| 1  | caused the defendants to want to commit the robbery based on |
| 2  | their interest in getting some money back.  The victim of the |
| 3  | robbery was believed by the defendants to be a marijuana |
| 4  | dealer.  So in September 2014, the defendants drove to the |
| 5  | vicinity of the victim's residence.  While on the way to the |
| 6  | defendant's residence, they were stopped by a police officer, |
| 7  | Mr. Jajaga was in the vehicle at that point.  Two other |
| 8  | individuals, including Mr. Fiseku, were walking sort of near |
| 9  | the residence that was going to be robbed.  The police officer |
| 10 | basically asked whether Mr. Jajaga was OK, saw late at night a |
| 11 | car pulled over by the side of the street; then left.  That |
| 12 | caused the defendants to decide to leave, basically.  And the |
| 13 | same officer encountered the defendants later in the night. |
| 14 | There was a search of the vehicle which recovered robbery |
| 15 | equipment, Taser, fake pistols, NYPD-logo merchandise. |
| 16 | THE COURT:  So it was ultimately an unconsummated |
| 17 | conspiracy. |
| 18 | MR. ALLEN:  Correct. |
| 19 | THE COURT:  Thank you.  Tell me about the discovery |
| 20 | you have produced already, I gather you produced to |
| 21 | Mr. Froccaro and have attempted to get it to Mr. Cohen and will |
| 22 | replicate the Froccaro production to Mr. Cohen.  What have you |
| 23 | already produced? |
| 24 | MR. ALLEN:  We have produced pictures of evidence that |
| 25 | was seized in the police stop I just described, as well as a |

F7fWfisC

1    report that was generated by the officers.  We've produced

2    emails that have been sent by Mr. Fiseku that were recorded by

3    the MCC, produced defendants' criminal history records.  And I

4    think that's basically about it, your Honor.

5              THE COURT:  What discovery remains to be produced?

6              MR. ALLEN:  There's a little bit of discovery with

7    respect to the victim, which relates to basically how we know

8    that he was a drug dealer.

9              THE COURT:  What does that mean?  Is it his criminal

10   record?  Is it something else?

11             MR. ALLEN:  We'll produce some evidence that shows

12   that the victim was actually selling marijuana.

13             THE COURT:  I'm sorry.  I'm trying to be more

14   tangible.  What Rule 16 evidence regarding the victim are you

15   saying you're going to soon produce?

16             MR. ALLEN:  We have a journal that was seized in an

17   airport.

18             THE COURT:  A?

19             MR. ALLEN:  Drug ledger that was seized at an airport,

20   and then I want to confer with the case agents and make sure

21   I'm not missing anything.

22             THE COURT:  Other than the drug ledger, is there any

23   other outstanding Rule 16 discovery?

24             MR. ALLEN:  Again, I would ask for ten days or so just

25   to confer with the case agents to make sure there's nothing

F7fWfisC

 1    else, but I don't believe there will be.

 2              THE COURT:  One thing I try to determine at the

 3    initial conference is whether there are any events that

 4    occurred here that by their nature might potentially give rise

 5    to a suppression motion.  Of course, I don't mean that you're

 6    to tell me whether or not any constitutional right was

 7    violated; I'm just trying to identify searches, seizures,

 8    postarrest statements, lineups, show-ups, that sort of thing.

 9    So going through those, are there any searches or seizures in

10    this case?

11              MR. ALLEN:  There could potentially be a motion with

12    respect to the stop that I described.

13              THE COURT:  Yes.  Just tell me whether there are

14    Fourth Amendment events here.  They'll tell me whether there is

15    going to be a motion.  Just are there searches and seizures,

16    and what were they?

17              MR. ALLEN:  So, search of a vehicle, which produced

18    the robbery equipment I described.

19              THE COURT:  Was that pursuant to a warrant?

20              MR. ALLEN:  No.

21              THE COURT:  What was the basis for the search?

22              MR. ALLEN:  My understanding is it was a consent

23    search.

24              THE COURT:  All right.  A consent search of the

25    vehicle.  Any other searches or seizures here?  Anything

F7fWfisC

1    incident to arrest, for example?

2              MR. ALLEN:  The drug ledger I mentioned was seized at

3    an airport.

4              THE COURT:  But that's seized not from a defendant.

5              MR. ALLEN:  Correct.

6              THE COURT:  Was anything seized from the person of

7    either of the defendants when they were arrested?

8              MR. ALLEN:  No, your Honor.

9              THE COURT:  What about postarrest statements; did

10   either of the defendants give a postarrest statement?

11             MR. ALLEN:  There's nothing I'm aware of that's

12   meaningful.

13             THE COURT:  You'll, I take it, confirm that with the

14   case agent.

15             MR. ALLEN:  I'll confirm it.

16             THE COURT:  Any lineups, any show-ups?

17             MR. ALLEN:  No.

18             THE COURT:  Thank you.  Anything else you want to

19   bring to my attention before I turn to the defense?

20             MR. ALLEN:  Not at this time, your Honor.

21             THE COURT:  Mr. Froccaro.

22             MR. FROCCARO:  Judge, you covered it.  There's nothing

23   for me to add to that, your Honor.  I guess the motion involved

24   would be to challenge the search.

25             THE COURT:  Right.

F7fWfisC

1          MR. FROCCARO:  And the stop as well, your Honor, my

2     understanding.

3          THE COURT:  One ball of wax, right.

4          MR. FROCCARO:  Correct.

5          THE COURT:  But the stop is only challenged if it

6     leads to the receipt of evidence.  You can't suppress the

7     defendant.

8          MR. FROCCARO:  Of course.

9          THE COURT:  So the issue would be ultimately whether

10    or not you're moving to suppress some evidence obtained which

11    is presumably the contents of the car.  Right?

12         MR. FROCCARO:  Right.

13         THE COURT:  Tell me from your perspective, you're the

14    one who's received the initial wave of discovery, how much time

15    you want until the next conference.

16         MR. FROCCARO:  Judge, there really isn't much

17    discovery at all.  All I received in terms of discovery related

18    to the case are photographs of items that they seized and one

19    page of a police report.  I spoke to Mr. Allen before we

20    appeared today and I don't think there's much else, Judge, so

21    I'm ready to set a motion schedule if your Honor's OK with

22    that.  I could have motions filed within 45 days, if that's all

23    right with the Court.

24         THE COURT:  45 days is going to be way too long.

25         MR. FROCCARO:  30 days.

F7fWfisC

| | |
|---|---|
| 1 | THE COURT:  Let me hear from Mr. Cohen first.  He's |
| 2 | not received any discovery.  I'm going to try to sync up a |
| 3 | schedule that works for both of you.  But I take it, |
| 4 | Mr. Froccaro, the next move here you're expecting to move to |
| 5 | suppress. |
| 6 | MR. FROCCARO:  That's correct, your Honor. |
| 7 | THE COURT:  And that suppression motion would |
| 8 | presumably be a memo of law as well as some form of factual |
| 9 | affidavit that creates a factual basis on which to believe that |
| 10 | the seizure was unlawful. |
| 11 | MR. FROCCARO:  Of course. |
| 12 | THE COURT:  Very good. |
| 13 | Mr. Cohen, what's your perspective? |
| 14 | MR. COHEN:  Pretty much the same position, your Honor. |
| 15 | I recognize that I haven't received discovery, but I know what |
| 16 | it is, and the fact of the matter is that my client was |
| 17 | actually arrested on the date that this incident allegedly |
| 18 | occurred, and there was, I believe, a stun gun, as I recall, |
| 19 | that was seized from the vehicle. |
| 20 | Am I right, Mr. Allen? |
| 21 | THE COURT:  Sorry.  You were saying what was seized? |
| 22 | MR. COHEN:  A stun gun. |
| 23 | THE COURT:  I think Mr. Allen referred to a Taser, I |
| 24 | think. |
| 25 | MR. COHEN:  Yes, a Taser or stun gun. |

F7fWfisC

1          MR. ALLEN:  Correct.

2          MR. COHEN:  Eventually that was the subject of a state

3    prosecution which ended up in a disorderly conduct charge and a

4    $500 fine.

5          THE COURT:  Sorry.  Back up here.  I had not been

6    aware of any state charge in the case.  Tell me about that.

7          MR. COHEN:  That's why I'm telling you.  My

8    understanding was that my client was arrested on the scene.  As

9    you know, there was a search.

10          THE COURT:  Right.

11          MR. COHEN:  And the search revealed a Taser.  My

12    client was charged with that and eventually pleaded guilty to

13    disorderly conduct in connection with that, which is not a

14    crime under state law, and I believe paid a $500 fine.  We

15    might move to suppress that as well, your Honor.

16          THE COURT:  To be clear, you're talking about the same

17    motion that Mr. Froccaro is making.

18          MR. COHEN:  Exactly.

19          THE COURT:  Either way, the evidence, the physical

20    evidence, that you would be moving to suppress is based on the

21    theory that the consent search of the car was somehow

22    unconstitutional.

23          MR. COHEN:  That's correct.

24          THE COURT:  There wasn't consent, for example.

25          MR. COHEN:  I just wanted to give your Honor a little

F7fWfisC

```
1    more information.  Apparently it didn't come out that there was
2    a prosecution in the state.
3              THE COURT:  Right.
4              MR. COHEN:  I wanted your Honor to be aware of that.
5    I don't believe that prosecution or the guilty plea to the
6    disorderly conduct bars Mr. Jajaga from making a motion to
7    suppress the physical evidence.
8              THE COURT:  You're foreshadowing a motion to suppress,
9    but you're not, I take it, arguing that in any way the state
10   prosecution is a Blockburger problem, is a double jeopardy
11   problem.
12             MR. COHEN:  Exactly.
13             THE COURT:  Mr. Cohen, do you have any view as to the
14   timetable on which you would want to move to suppress?
15             MR. COHEN:  I'm fine with the 30 days.
16             THE COURT:  I take it, defense counsel, you're
17   proposing that within 30 days you'll file a suppression motion
18   that will include both a motion and a factual affidavit that
19   creates a factual dispute here.
20             MR. FROCCARO:  Correct, Judge, and we'll file it
21   jointly, if that's easier for the Court, so it's not
22   repetitive.
23             THE COURT:  You're each entitled to file separately,
24   but obviously I'd be delighted if you coordinated and filed
25   jointly.  It certainly makes everyone's life easier.
```

F7fWfisC

1          MR. FROCCARO:  Certainly.

2          THE COURT:  Apart from that, is there anything else

3    you want to bring to my attention?

4          MR. FROCCARO:  Judge, obviously if I have to make the

5    motion, I need to know whether there are any other reports from

6    law enforcement.

7          THE COURT:  Before setting a schedule here, Mr. Allen,

8    what work have you done to educate yourself as to the

9    circumstances of the car stop and search?

10         MR. ALLEN:  Your Honor, I've conferred with the case

11   agents and read the reports.

12         THE COURT:  Was the case agent present?

13         MR. ALLEN:  No.

14         THE COURT:  Does the case agent know anything about

15   what happened with respect to the stop?

16         MR. ALLEN:  They've interviewed the officers, I

17   believe, who conducted the stop.

18         THE COURT:  To the extent there is physical evidence

19   here, there are, for example, reports with respect to what

20   happened.  Do you have those?

21         MR. ALLEN:  Yes, we produced one.  I'm not sure

22   whether there are any others.  I'll confirm that with the case

23   agent.

24         THE COURT:  I'd like you urgently to speak to the case

25   agent and get with the officers who participated in the

F7fWfisC

underlying search.  I want to make sure that the suppression

issue is responsibly litigated, and so to the extent there is

any Rule 16 evidence that needs to be produced with respect to

that it's promptly produced.

MR. ALLEN:  Yes, although, your Honor, I wouldn't

think that to the extent there were narrative reports about the

arrest, about the stop, I wouldn't think that was Rule 16.

THE COURT:  No.  Understood.  They would be <u>Jencks</u> in

connection with any testimony you would be producing, but I

want to make sure that to the extent that there is any Rule 16

evidence that bears on the stop, you've produced it.

MR. ALLEN:  Yes, your Honor.

THE COURT:  Government, how much time would you want

to respond to the anticipated suppression motion?

MR. ALLEN:  14 days, your Honor.  We'll be more quick

if your Honor would prefer.

THE COURT:  Are you in a position to know now the

following, which is what a suppression hearing would look like?

I ask because while we're all here together it seems to me to

make sense to set aside a day, or whatever the relevant amount

of time is, for the suppression hearing so that everyone can

plan for it.  Do you have any sense at this stage how many

participants, for example, from law enforcement there were in

the stop and seizure?

MR. ALLEN:  I think there were two, your Honor, and so

F7fWfisC

1    I would anticipate the suppression hearing would be at most

2    three or four witnesses, probably just the two.

3            THE COURT:  In other words, there would be potentially

4    two officers and potentially the two defendants.

5            MR. ALLEN:  Yes, and I don't know, maybe there would

6    be some sort of custodian or something like that.

7            THE COURT:  Are you aware of any other fact witness,

8    though?

9            MR. ALLEN:  Sorry?

10           THE COURT:  Are you aware of any other fact witness?

11           MR. ALLEN:  Yes, your Honor.  We're aware of another

12   fact witness.

13           THE COURT:  No.  To the events relating to the search

14   and seizure.  In other words, I'm trying to figure out if there

15   are any other persons who might be relevant to the search and

16   seizure.

17           MR. ALLEN:  Yes.  There was a third person who was

18   present at the stop.

19           THE COURT:  All right.

20           MR. ALLEN:  A third civilian.

21           THE COURT:  Very good.

22           MR. FROCCARO:  Judge, can I just raise one other

23   issue?  The one report that I have gotten from Mr. Allen is

24   redacted on three out of four pages.  Obviously I don't know

25   what's in there, if I could ask, I hate to burden the Court,

F7fWfisC

1    but if your Honor could look at it, or your Honor's law clerks,

2    to see whether it's appropriate to have redacted it, because I

3    don't know what's in it.

4            THE COURT:  Can you help us out with that, Mr. Allen?

5            MR. ALLEN:  Your Honor, a lot of it is the narrative

6    written by the officers that I mentioned earlier, and that

7    narrative is, in my view, 3500 material and not Rule 16

8    material.

9            THE COURT:  Sorry.  What's the nature of the report,

10   though?

11           MR. ALLEN:  There's a report that says I conducted a

12   stop.  It occurred at this time, this is why the stop, a basic

13   narrative description of the events that occurred.

14           THE COURT:  Mr. Froccaro, is there any reason to

15   disbelieve Mr. Allen that this is in the nature of a narrative

16   that would ordinarily be Jencks Act material as opposed to Rule

17   16?

18           MR. FROCCARO:  I don't, your Honor, but I didn't see

19   that.  It's a report that has nothing, not even a narrative,

20   the one I saw.

21           MR. ALLEN:  I think, your Honor, what I left was a

22   description of the items that were seized.  So I redacted the

23   narrative with the exception of those items.

24           THE COURT:  Mr. Froccaro, I have to say that Mr. Allen

25   in good faith is representing that he's reviewed the report,

F7fWfisC

1    that he's savvy to the distinction between Rule 16 and 3500.

2    He's representing that what is blacked out is in the nature of

3    a retrospective version of events in a memo.  That sounds like

4    3500 material to me.

5            MR. FROCCARO:  Judge, in every case I've worked on, I

6    usually get the narrative of the stop.

7            THE COURT:  Mr. Allen, why don't you do this.  Please

8    confer with your supervisors.  Present the report to them to

9    make sure that a considered judgment within the office is being

10   made as to whether or not this is properly produced.

11           MR. ALLEN:  Yes, your Honor.

12           THE COURT:  We're looking at at least six weeks from

13   now as to when the government's opposition is due.  That

14   basically brings us effectively to the end of August.  I need

15   to schedule what sounds like counsel's saying basically

16   three-quarters of the day.  Does that sound like enough for the

17   factual hearing here?  Mr. Allen, do you have a sense?

18           MR. ALLEN:  I think that would be more than enough,

19   your Honor.

20           THE COURT:  Mr. Froccaro.

21           MR. FROCCARO:  Sounds good, Judge.  Judge, are you

22   going to give us a brief time just to file a reply, if

23   necessary?

24           THE COURT:  It's not necessary, unless there is

25   something really unexpected here.  The law will be familiar to

F7fWfisC

 1   all of us and this is going to turn on the facts.  I'd be very

 2   surprised if a reply brief prior to the hearing were necessary.

 3   More likely, after the hearing I'll welcome brief argument from

 4   you as to what the evidence showed.

 5           MR. FROCCARO:  Very good.

 6           THE COURT:  Why don't we say Monday, September 14.  Is

 7   that a problem for anyone?

 8           MR. COHEN:  That's for the hearing?

 9           THE COURT:  That would be for the factual suppression

10   hearing.  I'm trying to schedule it so all of you can organize

11   your lives.

12           MR. COHEN:  It is the first day of Rosh Hashanah.

13           THE COURT:  You are correct.  Is anyone precluded from

14   the second day of Rosh Hashanah?

15           MR. COHEN:  I'm not, but right now I'm scheduled for

16   trial starting on the 15th.  I have a feeling it might not go

17   to trial, but it may well go to trial.  It's already been

18   scheduled.

19           THE COURT:  Who is the trial in front of?

20           MR. COHEN:  I'm sorry.  I don't remember, Judge.  If

21   it is a trial, it probably would last two days, three days.

22   It's likely that it won't be a trial, but I just wanted to

23   alert your Honor.

24           THE COURT:  Mr. Cohen, I need to schedule this on a

25   day where you can be sure to attend.  It sounds like there's a

F7fWfisC

1    chance that the 15th and 16th of September you can't attend on

2    account of your trial, even if it might plead.

3            MR. COHEN:  That's right.  I just wanted to make sure

4    that we didn't set a date and it turned out I couldn't.

5            THE COURT:  Would be imperil the 17th as well, or not?

6            MR. COHEN:  It might.  I'm sorry I'm not being so

7    definite, but I'm not in charge of how long the government

8    takes to present their case.

9            THE COURT:  Right.

10           MR. COHEN:  It's a short case, that's for sure.  Two

11   or three days would be the most that it would go.

12           THE COURT:  Let's schedule this for noon on Friday,

13   September 11 and hopefully be able to bring this in within five

14   hours, from noon to five.  Counsel, does that make sense?

15           MR. ALLEN:  For the government, yes, your Honor.

16           MR. FROCCARO:  Yes, your Honor.

17           MR. COHEN:  That's fine, your Honor.

18           THE COURT:  I have a sentencing at 11:30.  I'm going

19   to move that.  We'll start this at 11 o'clock.  What I want to

20   do is I want to get all the facts in in one day.  If we do this

21   from 11 to 5, with short breaks, we ought to have enough time

22   to handle the hearing.  Right?  Is everyone confident we

23   should, given the nature of this, just get the facts in in a

24   window that is just 11 to 5 on that Friday?

25           MR. FROCCARO:  Yes, your Honor.

F7fWfisC

1          THE COURT:  Mr. Allen, you have the closest view the

2     facts.  Is that realistic?

3          MR. ALLEN:  I think it only will take a couple of

4     hours, your Honor.

5          THE COURT:  Fine.  Then let's schedule the suppression

6     hearing for 11 o'clock on September 11.

7          Mr. Allen, is there an application for the exclusion

8     of time between now and September 11?

9          MR. ALLEN:  Yes, your Honor, to allow the defense to

10    review discovery, prepare motions and engage in discussions as

11    to disposition, if possible.

12         THE COURT:  Mr. Froccaro.

13         MR. FROCCARO:  I have no objection.

14         THE COURT:  Mr. Cohen.

15         MR. COHEN:  No objection, your Honor.

16         THE COURT:  I'm going to exclude time between now and

17    September 11 really for a variety of overlapping and

18    reinforcing reasons.  First of all, discovery has not yet been

19    provided in this case.  Some has, but not all has, and so I

20    want to give the government the opportunity to complete the

21    production of discovery.

22         I also think it's important, Mr. Allen, that you very

23    promptly move past the case agent as the clearinghouse here and

24    get to the actual fact witnesses.  I want to make sure that you

25    have a fully omniscient understanding of everything that's out

F7fWfisC

there and that you have an opportunity then to make a nuanced

assessment of what is Rule 16 versus what is Jencks, to make

sure the defense promptly has everything that could potentially

bear both on guilt or innocence in the case as well as the

suppression issue.

         MR. ALLEN:  Yes, your Honor.

         THE COURT:  I'm not in any way changing the line

between Rule 16 and Jencks; I just want to make sure that

thoughtful attention is given to the requirements under Rule

16.

         MR. ALLEN:  Yes.

         THE COURT:  Very good.  In addition, look, I'm mindful

that this is a new case, defense counsel may have their own

factual investigation to do *vis-a-vis* the stop or the

underlying circumstances, and the exclusion of time is intended

to permit that.  Mr. Allen further points out that particularly

given the relative newness of the case there is every

possibility there will be discussions about a potential

disposition, and the exclusion of time is intended to

facilitate that as well.  I'm going to exclude the time both

under Title 18, United States Code, Section 3161(h)(1)(G)

relating to potential review of plea offers, as well as Title

18, United States Code, Section 3161(h)(7)(A).  I find that the

interests of justice outweigh the interests of the defendants

and the public in a speedy trial.

F7fWfisC

1          May I ask you, government, what the bail status is, or

2     not, as to the two defendants.

3          MR. ALLEN:  Defendant Jajaga has been released on a

4     bond, and if your Honor's curious, I can give you the

5     description very shortly.  Mr. Fiseku is remanded and he was

6     remanded without prejudice initially, and then there was a bail

7     hearing two days later.

8          THE COURT:  In front of the magistrate judge?

9          MR. ALLEN:  Correct.

10          THE COURT:  I take it the outcome of that has not been

11     appealed to me.

12          MR. ALLEN:  That's correct.

13          MR. FROCCARO:  Judge, I planned to appeal to your

14     Honor.  I contacted your Honor's chambers; they suggested that

15     I get the minutes and your Honor would read that, and I'm

16     waiting for the minutes.

17          THE COURT:  As soon as you get the minutes, contact my

18     chambers so that we can schedule a convenient time for it that

19     works for the government and for you.

20          MR. FROCCARO:  Thank you, your Honor.

21          THE COURT:  In any event, bail is continued as to

22     defendant Jajaga.  Defendant Fiseku remains in custody, but

23     I'll be amenable if you want to have an appeal of the bail

24     determination once you've got a transcript.  I'll also

25     obviously need the pretrial services officer's report.

F7fWfisC

1          MR. FROCCARO:  You may want an updated one because at

2     the time that was one of the problems with the hearing.

3     Pretrial apparently left out a portion of my client's history.

4     If we could get an update, I guess your Honor would be able to

5     order it, I can't, because there was some confusion about that.

6          THE COURT:  When we have occasion to schedule the

7     appeal, alert my chambers to the need at that point to

8     communicate to pretrial to get an updated report.

9          MR. FROCCARO:  I will, your Honor.

10          THE COURT:  Anything further from the government?

11          MR. ALLEN:  No, your Honor.

12          THE COURT:  Anything further, Mr. Cohen?

13          MR. COHEN:  I just wanted to alert Mr. Allen, very

14     often when you're dealing with police officers, wherever

15     they're from, Bedford, I think it was, sometimes they're not

16     available, so if Mr. Allen would check to make sure they're

17     available on the hearing date.

18          THE COURT:  Right.

19          Mr. Allen, make sure they're available on that day.

20     You've committed to that day, it took a little conversation to

21     get there.  Please make sure they're available.  You've got

22     eight weeks.

23          MR. ALLEN:  Sure.  It shouldn't be a problem.

24          THE COURT:  But Mr. Cohen's point is well taken, that

25     the sooner you reach out to them, the less likely we're going

F7fWfisC

1    to have to adjourn.

2              MR. COHEN:  And I would expect that we're going to

3    have both officers.

4              THE COURT:  You should confer with Mr. Allen.  It

5    certainly sounds to me at first blush it's plausible that both

6    officers will be called to testify either by the government or

7    the defense.

8              Therefore, Mr. Allen, have them both available and see

9    where this goes.

10             MR. COHEN:  Thank you very much.

11             THE COURT:  Anything further from you, Mr. Froccaro?

12             MR. FROCCARO:  No, your Honor.

13             THE COURT:  Thank you.

14             (Adjourned)

15

16

17

18

19

20

21

22

23

24

25