JAMES R. FROCCARO, JR.
Attorney at Law
20 Vanderventer Avenue, Suite 103W
Port Washington, NY 11050
telephone: (516) 944-5062
fax: (516) 944-5066
email: JRFESQ61@aol.com

November 5, 2015

BY ECF
Hon. Paul A. Engelmayer
United States District Court Judge
40 Foley Square, Courtroom 1305
New York, NY 10007

        Re:  United States v. Bekim Fiseku, et al.
                15 Cr 384 (PAE)

Dear Judge Engelmayer:

      This letter is submitted to address the implications of *United States v. Bailey*, 743 F.3d 322, 229-342 (2d Cir. 2014), as it pertains to the *Terry* analysis in this matter. The *Bailey* case serves to further confirm that the police officers exceeded the scope of any permissible *Terry* stop in the case at bar when they placed the defendants in handcuffs.

      In *Bailey*, the late night stop and patdown of the defendant by detectives was supported by multiple articulable facts that he had been and was then engaged in criminal activity and might be armed. The police had obtained a search warrant for a basement apartment that was based upon an informant's statement that he [the informant] had purchased cocaine in the apartment and had seen a handgun with the drugs on a kitchen counter. And, while conducting surveillance of the building prior to executing the warrant, the detectives saw the defendant

1

and another man - both of whom matched the description of the armed drug seller by race, build and hair length - exiting the building through a gate at the top of the stairs leading from the basement level of the building. Rather than immediately approach the men, the detectives involved watched them enter a black Lexus and leave the scene. In an unmarked car, the detectives followed the Lexus for about one mile before pulling the car over in the parking lot of a fire station. The detectives asked both men to step out of the car and proceeded to pat them down to determine if they were armed - and neither man was. The detectives then asked the men their names and where they were coming from. And, both men identified the defendant's address as the same building where the search was being conducted - and at that point - the detectives handcuffed both men. When the defendant asked why he was being arrested - the detectives told the men that they were not being arrested - that they were being detained - and that a search warrant was being executed at the basement apartment. The detectives then returned to the apartment with the two men. Upon their arrival, the officers at the scene advised that a gun and drugs had been found in plain view in the basement apartment and the police then formally arrested both men.

Significantly, the Second Circuit held in *Bailey* that the police officers exceeded the permissible scope of a *Terry* stop when they put the defendants in handcuffs.[1] Specifically, the Circuit found that the detectives in *Bailey* had already conducted patdown searches of the defendant and his companion and had confirmed that neither was armed and having had both men exit the stopped vehicle in which they had been traveling, the officers had eliminated the risk that the men might obtain any weapon from inside the vehicle.

---

[1] In addition, the Circuit also found in *Bailey* that the taint of the Fourth Amendment violation in exceeding the reasonable bounds of a *Terry* stop by handcuffing drug defendant during his late night detention and the statements he made after being handcuffed was not eliminated.

The facts in *Bailey* are far more compelling than the officers were presented with in the case at bar before handcuffing defendants Fiseku and Jajaga.  Significantly, Detective Gruppuso testified that he perceived no "threat" to his safety as he approached the defendants in the park-n-ride, and that the stop merely constituted a "routine field interview" *prior to the search of the Pathfinder taking place*.  See transcript at pages 20-21 and 36.  As the U.S. Supreme Court stated in Sibron v. New York, 392 U.S. 40, 62-63 (1968):  "[i]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification."[2]

>Respectfully submitted,
>
>/ JRF
>
>James R. Froccaro, Jr.

JRF:pa

---

[2] Stripped to its essence, however, the foundation of the government's argument in opposition to the defendants' suppression motion is that the handcuffing was justified by the ensuing search.  But, this argument is not supported by the law.