UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA,

-v-

BEKIM FISEKU,

Defendant.

15 Cr. 384-1 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Bekim Fiseku seeking his release from Federal Correctional Institution Schuylkill ("FCI Schuylkill") under 18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk that the COVID-19 pandemic presents for inmates there. Dkt. 115 ("Def. Mot."); Dkt. 121 ("Def. Mem."); Dkt. 129 ("Def. Reply"). The Government opposes this request. Dkt. 128 ("Gov't Mem."). For the following reasons, the Court denies this application.

The offense for which this Court sentenced Fiseku to serve a 108-month sentence was his 13th conviction. His prior convictions included ones for narcotics distribution, bank robberies, home invasions, and racketeering. *See* Gov't Mem. at 1–2; Dkt. 97 ("Sent. Tr.") at 9–10, 29–32. Here, in September 2014, Fiseku and two co-conspirators conspired to commit another home-invasion robbery, in the guise of New York City police officers. The intended victim was a drug dealer with whom Fiseku had a prior dispute. Sent. Tr. at 26–27. They drove from New York City to northern Westchester late at night, with disguises and carrying a stun gun, BB gun, and blank gun replicating real pistols. *Id.* at 25–26. They canvassed and approached the target's home. *Id.* Fortunately, a bona fide police officer encountered Fiseku and, despite Fiseku's attempt to lie his way out of the situation, averted the robbery and arrested him. *Id.* at 26–29.

On November 18, 2016, Fiseku pled guilty to one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, pursuant to a written plea agreement. *See* Dkt. 77 ("Plea Tr.") at 2–3; Gov't Mem. at 3. On April 12, 2017, the Court sentenced Fiseku. Although the written plea agreement had stipulated that Fiseku was a career offender for purposes of the Sentencing Guidelines, Plea Tr. at 17–18, Fiseku argued at sentencing that he should not be treated as one, Sent. Tr. at 6–8. In sentencing Fiseku, the Court found that, in accord with the plea agreement and the presentence report ("PSR"), Fiseku did qualify as a career offender under the Guidelines, on account of his prior state and federal convictions. *Id.* at 7. Nonetheless, the Court emphasized that the criminal history underlying the career-offender enhancement, as opposed to the fact that it applied, was "ultimately much more important to me than the guidelines treatment" of that history. *Id.* at 8. In the end, the Court sentenced Fiseku to 108 months' imprisonment—below the Guidelines range of 151 to 188 months' imprisonment yielded by the career-offender enhancement—to be followed by three years' supervised release. *Id.* at 5, 42. As of today, Fiseku has served about 60%—five years and six months—of his stated prison term. Assuming good behavior, he would be eligible for release on February 20, 2023, in about two years and two months. Gov't Mem. at 4; Def. Mem. at 4 n.3, 5.

On November 10, 2020, the Court received a *pro se* motion from Fiseku seeking early release because of the COVID-19 pandemic. Def. Mot. On December 10, 2020, Fiseku's appointed counsel filed a memorandum in support. *See* Def. Mem. Fiseku there argues that compassionate release is warranted in light of the current pandemic, his obesity (which poses an increased risk of complications from COVID-19), and the unexpectedly harsh and dangerous circumstances at FCI Schuylkill occasioned by the pandemic. Other factors that he argues

support release are the needs of his family, the harsh results yielded by the career-offender Guidelines, and Fiseku's asserted capacity for rehabilitation.

On December 23, 2020, the Government opposed Fiseku's motion. *See* Gov't Mem. It first argues that Fiseku has failed to show that his case presents extraordinary and compelling reasons for release, citing the uncertain evidence that Fiseku is in fact obese. It also argues that Fiseku's challenges to the career-offender Guidelines' application are not an appropriate basis for compassionate release under 18 U.S.C. § 3582(c). Independently, the Government argues that Fiseku's release at this point in his sentence would conflict with the factors set forth in 18 U.S.C. § 3553(a).

> Under 18 U.S.C. § 3582(c)(1)(A), a court
>
> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). But with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to

allow defendants independently to seek compassionate release from federal courts. *Ebbers*, 432 F. Supp. 3d at 422–23.

Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. And the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own, without the intervention of the BOP. Accordingly, although courts—including this one—had treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling

4

reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

The parties first dispute whether Fiseku's case presents extraordinary and compelling reasons warranting early release. Fiseku argues that, taken together, the harsh prison conditions arising from the COVID-19 pandemic; his heightened vulnerability to the virus resulting from his obesity; his need to care for his children and mother; and post-sentencing case authority limiting the reach of the career-offender provision,[1] comprise such reasons. The Government counters that while the COVID-19 pandemic presents heightened risk to inmates, Fiseku does not face any meaningfully higher risk than other prisoners or otherwise merit relief. First, it notes that there is no evidence of Fiseku's asserted obesity—the only high-risk category that he contends he falls into. Gov't Mem. at 7. Second, it argues that Fiseku's challenges to the Court's Guidelines calculation, based on intervening case law and the PSR's inclusion of a prior offense, were more appropriately raised on direct appeal or in habeas proceedings. *Id.* at 8–9. It does not address Fiseku's other proffered bases for finding extraordinary and compelling circumstances, such as his need to care for his family. *See id.* In his reply, Fiseku focuses

---

[1] Fiseku primarily notes that decisions since his sentencing have limited the reach of the statutory term "crime of violence." *See, e.g.*, *United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019) (conspiracy to commit Hobbs Act robbery not a crime of violence under 18 U.S.C. § 924(c)). He also argues for a narrowed interpretation of the term "controlled substance offense" as used in U.S.S.G. § 4B1.1(a), even though the Second Circuit has recently rejected the same argument. *See* Def. Mem. at 6 (discussing *United States v. Tabb*, 949 F.3d 81, 87 (2d Cir. 2020)). Last, he challenges the inclusion of a 1999 controlled-substance offense in his Guidelines calculation. *Id.* at 7. He posits that, were he sentenced today, he might not have been found a career offender.

mostly on the Guidelines issue, identifying certain out-of-District cases in which courts found changes in case law affecting Guidelines calculations to support compassionate release under § 3582.  *See* Def. Reply at 1–2 (citing *United States v. Derricoatte*, No. 1:11 Cr. 91-10, 2020 WL 5629095, at *4 (N.D. Ohio Sept. 21, 2020); *United States v. Adams*, No. 3:04 Cr. 30029 (NJR), 2020 WL 3639903, at *3–4 (S.D. Ill. July 6, 2020)).

At the outset, Fiseku's asserted reasons for release, while not to be minimized, fall short of the extraordinary and compelling bases for such relief that have been presented in most cases in which the Court has granted compassionate release.  To be sure, the COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  The crowded nature of federal prisons in particular presents an outsized risk that the COVID-19 contagion, once it gains entry, will spread.[2]  In that respect, COVID-19 poses a heightened health risk to all inmates.  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  Beyond the risks to health, the pandemic has also subjected all inmates to far more restrictive conditions of confinement, and has resulted in limits on access to visitors, including family, far beyond what could have been expected at the time of sentencing.  For these reasons, in the past months, various courts, including this one, have ordered the temporary

---

[2] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

release of inmates held in pretrial or presentencing custody[3] and the compassionate release of high-risk inmates serving federal sentences.[4]

Fiseku offers relatively limited facts, however, as to why the risks he faces exceed those faced by others in federal custody. The Court finds that three facts differentiate Fiseku from the general population, to a degree. He is age 49, overweight, and incarcerated at a facility with a recent rise in COVID-19 cases. *See* Def. Mem. at 2–3. These factors may indeed put him at somewhat higher risk of contracting the disease and/or experiencing more severe outcomes from it than would younger or fitter prisoners, or ones held at facilities with a lesser incidence of COVID-19.

---

[3] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would require his temporary release).

[4] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heighted vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 20) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

On the other hand, there is no evidence, aside from Fiseku's disputed claim of obesity, that he has any conditions that create significantly heightened vulnerability to COVID-19. *See* Gov't Mem. at 6–7 (noting that only evidence of Fiseku's BMI places it just below the level that the CDC warns presents a heightened risk); *see also* Def. Reply (no rebuttal of Government's discussion of medical evidence). In that regard, his circumstances sharply contrast with those of various sentenced defendants whose release this Court has ordered under § 3582(c). *See supra* note 4; *e.g.*, *Simon*, 18 Cr. 390 (PAE), Dkt. 507 at 5–9 (granting compassionate release to 72-year-old defendant with HIV, chronic obstructive pulmonary disorder, prostate cancer, Hepatitis C, and hypertension); *Davies*, 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (similar). In so noting, the Court does not minimize the toll exacted by Fiseku's prolonged separation from his family or his inability to attend to their needs. But such circumstances do not differentiate Fiseku from other prisoners. Many incarcerated persons have similar ties—and today are experiencing similar constraints—and Fiseku has not argued that his family is uniquely or especially in need of his presence and support.

To the extent Fiseku argues that he was wrongly found a career offender, justifying relief under § 3582, the Court firmly rejects that claim. Even assuming that an assessment of Fiseku's classification as a career offender might today yield a different outcome given intervening case law, the Court was emphatic at sentencing that Fiseku's classification as a career offender did not affect its judgment as to the reasonable sentence. Thus, whether or not an errant Guidelines calculation may support relief under § 3582 in some cases, it does not do so here. Indeed, at sentencing, the Court repeatedly made clear that the sentence imposed turned on the facts of Fiseku's crime and criminal history—not the applicable Guidelines range. *See, e.g.*, Sent. Tr. at 8 ("[I]t is the facts that are ultimately much more important to me than the guidelines

8

treatment of them."); *id.* at 40–41 ("For the record, I would have imposed the same sentence here regardless of whether or not the career offender guideline applied. It is ultimately the facts, the underlying facts, and not the sentencing guidelines' conclusions from them and numbers generated by them, that is influential to me."). Reflecting that the Court's judgment was independent of the Guidelines, the 108-month sentence imposed fell outside *both* potentially applicable Guidelines ranges: 70–87 months without the career-offender enhancement and 151–188 months if it applied. *See* Sent. Tr. 12, 40–41. And Fiseku notably does not dispute the facts underlying his criminal record, but merely the Guidelines' treatment of them. Because the Court would have imposed the same sentence regardless of whether it found Fiseku a career offender, that classification does not present an extraordinary and compelling reason for his early release. *Cf. Derricoatte*, 2020 WL 5629095, at *4 (granting release where "the time [defendant] has already served likely represents twice the sentence . . . he would receive today").

For these reasons, although the pandemic is an extraordinary circumstance, it is a close question whether Fiseku has identified compelling reasons for his release. But even assuming there are such reasons, in order to find release justified, the Court must also find that it is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). And here, the Court finds that the § 3553(a) factors, viewed collectively, do not support expediting Fiseku's release by more than two years, as he requests. Several of those factors—most especially the need "to protect the public from further crimes of the defendant" and to effect specific deterrence, 18 U.S.C. § 3553(a)—weigh especially heavily.

Fiseku's conduct was deliberate, calculated, and terrifying. As the Court reviewed at sentencing, Fiseku and his co-conspirators set off from New York City, with disguises and with extensive tools, intending to invade and rob a rival drug dealer's home in the middle of the night.

9

*See* Sent. Tr. at 25–29.  Although law enforcement averted the crime, the plot that Fiseku led "ran the risk of terrorizing" both his intended target and other innocent people who may have been in that home, "maybe scarring them for life." *Id.* at 27.  He also "created a real risk of violence or death":  "Had the crime spun out of control, as it easily could have, with someone shot or stabbed or beaten to death, you might well be faced here today with charges that included the word 'murder.'" *Id.* at 28–29.  On this basis, the Court reasoned that the seriousness of Fiseku's offense, the need for the sentence to promote respect for the law, and the need for just punishment, "alone point towards a long sentence." *Id.* at 25.

The Court also found Fiseku's 108-month sentence necessary to achieve the "enormous" interests in specific deterrence and protection of the public presented by his case.  *Id.* at 29.  Before the offense at issue, Fiseku had amassed an alarming 20-year criminal history, which included two racketeering convictions, several burglaries and bank robberies, and a prior attempted home invasion which bore a striking resemblance to the instant offense.  *See id.* at 29–32.  Several convictions had led to substantial sentences, for which Fiseku spent 80 months in prison between 2001 and 2007.  *Id.* at 30–31.  Nonetheless, in 2008, shortly after his release, Fiseku committed yet another burglary, for which he received yet another substantial sentence.  *Id.* at 32.  And less than a year after his release from that term of imprisonment and ensuing term of parole, Fiseku planned and was caught in the act of committing the home-invasion offense for which he is currently imprisoned.  *See* Dkt. 84 ("PSR") ¶ 40.

As a result, the Court emphasized at sentencing, to achieve the interests of protecting the public and, if possible, deterring Fiseku from committing further crimes, any sentence imposed must be "certainly longer than any [Fiseku had] previously received." *Id.* at 33; *see also id.* at 32 ("In light of your track record, the only type of sentence that would seem to have much promise

to deter you upon release from committing a new robbery would be one that is longer than any you previously received."). That assessment remains compelling today. Indeed, granting Fiseku's motion now, 66 months into his term of imprisonment, would result in a *lesser* sentence than the 80-month sentence he served between 2001 and 2007, which proved utterly inadequate to deter Fiseku from resuming committing burglaries and robberies. Further, unlike some defendants whose conduct can be attributed to immaturity or the recklessness of youth, Fiseku committed this most recent crime when he was 44 years old, with two children. *See* Def. Mem. at 4; Sent. Tr. at 45. There thus remains a powerful interest in protecting the public from further crimes by Fiseku. The Court has not been given any reason for confidence that, if released today, Fiseku would not return to violent crime.

Accordingly, the Court cannot find that a sentence reduction to 60% of that originally imposed (or 72% assuming he maintains good-time credit), as Fiseku now seeks, is compatible with the important interests undergirding § 3553(a). In arguing the contrary, Fiseku focuses on his conduct while incarcerated and the unexpectedly harsh conditions of confinement he faces as a result of COVID-19. *See* Def. Mem. at 4–7. As to Fiseku's conduct in custody, the Court commends him for productively using his time in prison—as it did at sentencing. *See* Sent. Tr. at 37. But that circumstance, which is not unusual, does not support reducing his sentence by more than two years. And while time served during the pandemic is harder than during normal times, a sentence reduction of the scope Fiseku now seeks would result in a sentence that disserves the interests driving the Court's sentencing determination—most significantly the interests in public protection, specific deterrence, and assuring that the sentence imposed reflects the gravity of the offense.

For this reason, the Court has denied compassionate release applications by many defendants that were made early in or in the middle of their prison terms—even when a defendant had a health condition indicative of heightened vulnerability to COVID-19. *See, e.g.*, *United States v. Ortiz*, No. 16 Cr. 439 (PAE), Dkt. 84 at 2, 6–7 (S.D.N.Y. July 6, 2020) (denying compassionate release for 49-year-old defendant with borderline obesity who had served 70% of 84-month sentence for conspiracy to commit Hobbs Act robbery); *United States v. Leon*, No. 15 Cr. 877 (PAE), Dkt. 320 at 5–7 (S.D.N.Y. June 11, 2020) (denying compassionate release for defendant with asthma who had served 60% of stated sentence of 84 months' imprisonment); *United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) (denying compassionate release for a defendant without heightened risk of contracting COVID-19 who had served "approximately 54 months of his significantly below-guidelines sentence of 78 months' incarceration"); *see also United States v. Francisco*, No. 19 Cr. 131 (PAE), Dkt. 416 at 1, 5 & n.5 (S.D.N.Y. June 29, 2020) (denying compassionate release where defendant had served only 60% of his stated sentence).

And Fiseku's circumstances diverge from the substantial number of defendants whose compassionate release the Court *has* granted in recent months, recognizing the changed circumstances presented by COVID-19. Those defendants generally had much more severe medical conditions, and a number had served a greater proportion of their sentences, such that the Court found the sentence resulting from a grant of compassionate release consistent with the § 3553(a) factors. *See, e.g.*, *Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (ordering compassionate release of elderly defendant who had served over half his sentence and suffered from, *inter alia*, HIV, cancer, and hypertension); *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 at 2–4 (S.D.N.Y. Apr. 10, 2020) (ordering compassionate release a defendant who had served all but

seven months of an 88-month sentence); *Hernandez*, 451 F. Supp. 3d at 305 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for a defendant who had asthma and had served nine years of his 10-year sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2523 at 2 (S.D.N.Y. Oct. 9, 2020) (same for a defendant who had served nearly 93 months of his 121-month sentence, and was expected to be released to a halfway house in five months).

The Court thus finds that the § 3553(a) factors disfavor Fiseku's release at this time.

Finding that—even if Fiseku's case presented extraordinary and compelling reasons favoring release—the § 3553(a) factors are not compatible with the reduction of sentence sought, the Court denies Fiseku's motion for compassionate release or reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

                                                      _____
                                                      PAUL A. ENGELMAYER
                                                      United States District Judge

Dated: December 28, 2020
           New York, New York