**Moskowitz Colson**
**Ginsberg Schulman**

Moskowitz Colson
Ginsberg & Schulman LLP

80 Broad Street, Suite 1900
New York, NY 10004

(212) 257-6455
www.mcgsllp.com

June 23, 2025

**By ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Bekim Fiseku*, **15 Cr. 384 (PAE)**

Dear Judge Engelmayer:

  I write in advance of Mr. Fiseku's violation hearing on June 24, 2025, to object to the government's introduction of certain evidence, including a 911 call, the hearsay statements of a non-testifying witness, a video compilation, and two witness identifications of the defendant.

  <u>The Violation Report</u>

  The amended violation report, filed on June 9, 2025, includes eight alleged violations, four of which relate to an incident that occurred on October 22, 2024 in Queens, New York. The government alleges that Mr. Fiseku and another individual attempted to burglarize a warehouse located at 38-27 Crescent Avenue in Long Island City. As the police arrived on the scene, Mr. Fiseku and the other individual allegedly fled in a black pickup truck, prompting a high-speed chase involving multiple police cars. When the truck crossed the intersection of 34th Avenue and 37th Street, it allegedly struck and killed a female cyclist.

  <u>The Government's Evidence</u>

  The government seeks to introduce a 911 call made during the attempted burglary, the hearsay statements of a non-testifying witness, a video compilation that includes both video and audio evidence, and two witness identifications of Mr. Fiseku from the video footage.

  The 911 call was made by anonymous male at 11 pm on October 22, 2024. The caller states that he "think[s] somebody is trying to break in at uh … by the hotel over here … 38-20 Crescent Street." He does not identify himself and does not disclose his location or basis for knowledge. In addition, the address he provides is incorrect. 38-20 Crescent is across the street from the site of the alleged break-in.

Although the government claims the call was made by Ronald Hesse, it does not intend to call Hesse to testify at the hearing. Instead, the government seeks to prove that Hesse was the caller through the testimony of Elias Batias, who rented the warehouse on Crescent Avenue and subleased a portion of the space to Hesse. Batias will state that he listened to the 911 call and that the voice on the call is Hesse's voice. The government's pre-hearing memo suggests it also intends to introduce hearsay statements Hesse allegedly made to Batias, explaining that he watched the incident on a live video camera and did not know the men involved.

The video compilation is an hour long and contains both video and audio evidence, including video footage of Crescent Avenue during the attempted burglary, video footage of the accident, the 911 call, and police radio runs. The compilation was created by NYPD Detective Nicholas Sofokles, who will testify at the hearing.

Two witnesses are expected to testify that they identified Mr. Fiseku in the video compilation, Probation Officer Ryan Lehr and FBI Agent Jarryd Butler. Both will state that their identifications were based on prior face-to-face interactions with the defendant.

<u>The 911 Call is Inadmissible</u>

The Confrontation Clause and Federal Rules of Evidence do not apply "with full force" at a revocation hearing, but a defendant is still afforded the protections offered by the Due Process Clause and Federal Rule of Criminal Procedure 32.1. *United States v. Diaz,* 986 F.3d 202, 209 (2d Cir. 2021). Pursuant to Rule 32.1, a defendant in a revocation proceeding must have the opportunity to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). When the government seeks to introduce the out-of-court statements of a declarant who is not a witness at the hearing, it must establish that the statements fall within a recognized hearsay exception. If the statements are not covered by a hearsay exception, "Rule 32.1 requires the court to determine whether good cause exists to deny the defendant the opportunity to confront the adverse witness." *United States v. Williams,* 443 F.3d 35, 45 (2d Cir. 2006). The good cause determination is made by balancing "the defendant's interest in confronting the declarant, against … the government's reasons for not producing the witness and the reliability of the proffered hearsay." *Id.*

The inquiry into the admissibility of hearsay statements does not end with Rule 32.1. Even when the government satisfies the good cause test, the hearsay statements must bear "sufficient indicia of reliability" to be admissible at a hearing. *See Diaz,* 986 F.3d at 210 ("[H]earsay evidence may be admissible in probation revocation hearings if it bears sufficient indicia of reliability.") (citation omitted); *see also United States v. Bari,* 599 F.3d 176, 179 (2d Cir. 2010) (court's finding at revocation proceeding must be "based on 'verified facts' and 'accurate knowledge.'") (citation omitted).

The government asserts that the 911 call is admissible as non-hearsay evidence because it constitutes a present sense impression or excited utterance. Both of these exceptions to the hearsay rule require the declarant to witness the event in question. *See* Fed. R. Evid. 803(1) (a present sense impression must describe an event and be made "while or immediately after the

defendant perceived it"); Fed. R. Evid. 803(2) (an excited utterance must relate to an event and be made "while the declarant was under the stress of excitement that it caused"). In this case, there is no evidence that the 911 caller actually witnessed the attempted burglary. He does not identify himself, does not disclose his location, and does not explain his basis for knowledge, *i.e.,* whether he witnessed the break-in, watched it via video, or heard about it from someone else. The government claims the caller had a live video camera pointed at the building where the break-in occurred. Unless the caller testifies, however, the government cannot prove that the camera was on or that the caller was watching it at the time. Absent the caller's location or basis for knowledge, his hearsay statements do not fall within an exception to the hearsay rule and should be excluded from evidence.

Nor do the statements bear sufficient indicia of reliability. Tellingly, the caller provides the wrong address to the 911 operator. Surely, Hesse knew the address of the storage space he rented from Batias. Thus, if he did make the call and did witness the break-in, he would have provided the correct address to the operator.

The government asserts that the call is reliable because it will be corroborated by other evidence, including surveillance video and the testimony of Batias. Yet such corroboration is insufficient. The surveillance video shows a black truck parked near the location of the alleged burglary and captures some banging and two men talking, but it does not show what the men are doing. Batias was not in the area when the alleged crime occurred and did not witness any part of it. He is expected to testify that Hesse showed him video footage of the burglary later that night. But the Court should reject this testimony because the video footage Hesse allegedly showed Batias no longer exists, and Hesse's lawyer told the government that Hesse did not store the footage and never had the video to share.

Because the 911 call does not fall within an exception to the hearsay rule or bear sufficient indicia of reliability for admission at a revocation hearing, the Court should exclude it from evidence.

<u>Hesse's Statements to Batias are Inadmissible</u>

Hesse's alleged statements to Batias that he watched the burglary via video and did not know the men involved are inadmissible under Rule 32.1 because they do not fall within a recognized hearsay exception, and no good cause exists for denying Mr. Fiseku his right to confront Hesse. The government asserts that Hesse will invoke the Fifth Amendment if called to testify. Under the balancing test required by Rule 32.1, Mr. Fiseku's right to confrontation should prevail over Hesse's right against self-incrimination because it is Mr. Fiseku who faces potential punishment, including the risk of a lengthy prison term. Nor do the statements bear sufficient indicia of reliability for admission. The statements were made to Batias, who is not a reliable witness, and the only corroborating evidence is the 911 call, which also constitutes hearsay.

The Video Compilation is Inadmissible

The government seeks to admit the video compilation under Rule 1006 as a "summary" of recordings that "cannot be conveniently examined in court." Fed. R. Evid. 1006. While the Court has discretion to admit summary evidence, the summary must accurately represent the totality of the evidence. Detective Sofokles' video compilation is misleading because it only depicts a small portion of the surveillance footage collected by the NYPD.

Detective Sofokles is expected to testify that he created the compilation from dozens of hours of surveillance footage. According to the government, he will "confirm that he excluded certain footage only when it was duplicative of events already captured by other cameras or showed periods of inactivity, and that no footage was excluded that would change the narrative presented by the compilation." Gov't ltr at 9. In fact, Detective Sofokles excluded critical footage showing that the cyclist was traveling at a high rate of speed and ran a yellow light just seconds before being struck by the truck. While Mr. Fiseku intends to admit this video evidence himself, Detective Sofokles' failure to include it in the compilation calls into question his criteria for selecting relevant segments of the video, as well as the accuracy and completeness of his work.

The video compilation is also inadmissible because it contains hearsay evidence, including police radio runs and the anonymous 911 call. For the reasons stated above, the 911 call does not fall within an exception to the hearsay rule or bear sufficient indicia of reliability. Accordingly, the government should not be permitted to admit the call through the back door by offering it as part of the video compilation.

The Identifications are Inadmissible

The Court should prohibit Officer Lehr and Agent Butler from testifying that they identified Mr. Fiseku in the video compilation because the identification procedures employed by the government were unduly suggestive. Officer Lehr will testify that he first identified Mr. Fiseku in the footage in October 2024, then identified him again more recently while preparing his testimony with federal prosecutors. Agent Butler was not shown the footage until meeting with prosecutors on June 19, 2025. Before identifying Mr. Fiseku in the video, both witnesses clearly knew that the prosecutors and law enforcement agents investigating the matter had concluded Mr. Fiseku was the perpetrator.

The identification evidence is also inadmissible on an independent and separate ground. Should the Court permit Officer Lehr and Agent Butler to testify that they identified Mr. Fiseku in the video, their testimony would usurp the role of the Court to determine whether Mr. Fiseku actually appears in the footage. Like Officer Lehr and Agent Butler, the Court has had multiple face-to-face interactions with Mr. Fiseku. It should prohibit the government's witnesses from telling it what conclusion to reach.

Respectfully submitted,

/s/

Deborah Colson
*Attorney for Bekim Fiseku*

cc: Government Counsel